UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUELLA PEHLKE, Individually and as Special Administrator of the Estate of FRANK PEHLKE, Deceased,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CBS Corporation,<br><br>　　　　Defendant. | Case No.: 12–cv–00596<br><br>Honorable Virginia M. Kendall |

**Motion to Limit Costs of *Daubert* Hearing**

_____

　　Plaintiff moves this Court to enter a protective order to limit costs of the August 1, 2016, *Daubert* hearing based on the ruling of summary judgment ruling of Judge Robreno in MDL-875, Seventh Circuit case law on the proper scope of a Daubert hearing inquiry, and available testimony from past depositions and reports by experts.

　　Pursuant to Court order, *Daubert* motions are due by July 1, 2016 and a *Daubert* hearing is scheduled for August 1, 2016.[1] (ECF Doc # 38.) The expense to Plaintiff of the *Daubert* hearing is a minimum of $30,000 for expert fees if, as CBS Corporation ("CBS") has requested, four of Plaintiff's five experts, must appear in Court. Plaintiff seeks by this motion to limit the costs of experts by determining which, if any, need to be scheduled in person. The cost of reserving the time of experts to appear, which must be done in advance, involves cancellation fees that exceed $10,000. Plaintiff also seeks to limit unnecessary costs of cancellation.

---

[1] Plaintiff moved this Court to limit *Daubert* motions to non-dispositive matters on March 31, 2016. (ECF Doc # 42.) The ultimate ruling on that motion is also relevant to the permissible scope of the *Daubert* hearing.

1

Importantly, industrial switchgear is a common piece of equipment built to a standard set of model number specifications. Westinghouse, for which CBS is a successor in interest, offered three basic lines of industrial switchgear – DB, DA, DH/DHP. The cost of the *Daubert* hearing personal appearances should be weighed in light of past testimony which exists on the same CBS models. All of Plaintiff's experts - except for Dr. Bedrossian - testified multiple times about switchgear exposures in cases which involve CBS.[2] To reduce costs of experts appearing at a hearing, those transcripts are available for this Court's consideration if necessary.

*Daubert scope*

The scope of the *Daubert* hearing in this case is limited by case law. The Court of Appeals for the Seventh Circuit held:

- The "trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000)
- "The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013).
- "Rule 702's requirement that the district judge determine that the expert used reliable methods does not ordinarily extend to the reliability of the conclusions those methods

---

[2] Dr. Bedrossian has no personal knowledge of the construction of switchgear. His opinion is based on testimony by other witnesses and evidence establishing an environment in which the victim inhaled asbestos containing dust from the switchgear work over a long duration of time. See discussion below specific to Dr. Bedrossian.

produce—that is, whether the conclusions are unimpeachable." *Id.* (Quoting *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 765 (7th Cir. 2013).)

- "The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology—the framework—of the expert's analysis." *Id.* at 808.

In light of this case law, Plaintiff counsel reached out to defense counsel and asked what the *Daubert* issues are to avoid unnecessary costs of scheduling expert witnesses to appear in Court. (Ex 1.) The response by defense counsel, discussed below, did not raise concerns related to expert methodology. (Ex 2). Instead, defense counsel expressed concerns about "quality" or "reliability" of the "data" and "assumptions" experts are relying upon to form conclusions about exposure and causation. The case law establishes these matters are not part of the Court's gate keeping function under Seventh Circuit *Daubert* case law. *Manpower,* 732 F.3d at 806. CBS's concern about sufficiency of evidentiary data on exposure and causation is also untimely because it was adjudicated in the asbestos MDL-875 order denying CBS's summary judgment motion.

The position of CBS is that exposures to dust from routine industrial switchgear maintenance does not produce dangerous levels of asbestos exposure which are a cause of mesothelioma. The argument was already rejected in this case by order entered on February 23, 2015, by Judge Eduardo Robreno, the supervising judge in the asbestos MDL-875, denying the CBS motion for summary judgment. Judge Robreno held: "Defendant's motion for summary judgment is denied because Plaintiff has identified sufficient evidence to support a finding of causation with respect to switchgear manufactured by Defendant." (Ex.3 at 10, ED PA Case 2:12-cv-60049 Document 192.) In concluding the evidence about causation was sufficient,

3

Judge Robreno made specific findings about asbestos content of switchgear, exposure, and other evidentiary data, stating:

> There is evidence that Decedent was exposed to respirable dust blown out of Westinghouse switchgear during the period of about 1969 to 1980. There is evidence that the switchgear was of the DH or DHP series (because it was connected to motors and large pumps). There is evidence that this switchgear contained asbestos (because the evidence indicates that, until 1977, all DH and DHP series switchgear contained asbestos). (Moreover, there is evidence from expert Wineman that all switchgear in industrial and large commercial settings over 440 volts from 1945 to the early 1980s contained asbestos, and there is testimony from Decedent's co-worker that most of the switchgear was marked as "440 volts.") As such, a reasonable jury could conclude from the evidence that Decedent was exposed to asbestos from Westinghouse switchgear such that it was a "substantial factor" in the development of his illness.

(Ex.3 at 10.)

In light of the ruling by Judge Robreno, the law of the case is the data or evidentiary foundation is sufficient for Plaintiff's experts to testify Frank Pehlke's switchgear exposures were causative of his mesothelioma. Further inquiry related to data about causation and exposures from switchgear work can be conducted by cross examination at trial - and can be the subject of a directed verdict motion. However, the ruling of Judge Robreno forecloses the need for a *Daubert* hearing about foundational data for causation and exposure opinions.

CBS has not suggested any concerns within the scope of the factors traditionally analyzed under *Daubert*. The Seventh Circuit held that "In *Daubert*, the Supreme Court outlined four factors that may be pertinent to the district court's analysis of expert testimony. Those traditional factors are: 1) 'whether [the expert's theory] can be (and has been) tested'; 2) 'whether the theory or technique has been subjected to peer review and publication'; 3) 'the known or potential rate of error'; and 4) 'general acceptance' among the relevant scientific community." *Smith,* 215 F.3d 713 at 719. None of these factors are mentioned in the letter from defendants.


*Communications with defendant about Daubert issues*

Plaintiff communicated with CBS counsel in an attempt to determine the scope of CBS's *Daubert* challenges on April 18, 2016. (Ex.1.) Plaintiff began by narrowing the experts it may call to "Huttner, Wineman, Abraham or Bedrossian, Kenoyer or Garza, and Brody." (Ex.1.) Plaintiff has since determined that Dr. Bedrossian will be the medical witness and Dr. Abraham will not be called. CBS responded to Plaintiff's communication on April 21, 2016 and provided identification of the "witnesses [CBS] will be challenging on the basis of *Daubert*." (Ex.2.)

Dr. Bedrossian

Dr. Bedrossian is a board certified, Illinois licensed medical doctor who has authored many publications about asbestos diseases. CBS stated that "neither Dr. Abraham nor Dr. Bedrossian will or can opine as to a foundation that can eventually exhibit causation." (Ex.2.) The cost of Dr. Bedrossian (offices in Oak Park, IL) to prepare and testify at a *Daubert* hearing is estimated to be $8-10,000.

If the concern with Dr. Bedrossian's testimony is only about "foundation" for a medical causation opinion, the matter was resolved at the dispositive motion stage by the finding of Judge Robreno about sufficiency of the causation evidence. A *Daubert* hearing is not needed on a matter which has been resolved. Because medical causation is a required element of proof for Plaintiff's case, a *Daubert* finding excluding Plaintiff's medical causation expert testimony is likely dispositive. Relitigation of a dispositive issue is barred by the dispositive motion deadline in MDL-875.

Additionally, Dr. Bedrossian lacks personal knowledge about switchgear and relies for his opinion on the reports and testimony of other witnesses. Dr. Bedrossian is opining based on

hypothetical assumptions and data on duration of exposures that if asbestos is released from switchgear work and a dusty environment is created for over 500 hours, the exposures are a medical cause of decedent's mesothelioma based on decedent's medical records.[3] The quality and reliability of the data and assumptions are not part of the *Daubert* inquiry. CBS took the deposition of Dr. Bedrossian in the *Pehlke* case and questioned him about his original report which has since been supplemented.[4] The methodology of Dr. Bedrossian in attributing causation in the *Pehlke* case to the 500 hours of switchgear exposures is the same as for prolonged exposures to other products releasing dust containing asbestos and does not appear to be disputed.[5]

Kenoyer/Garza

Plaintiff will use either Stephen Kenoyer or Ken Garza to testify at trial about industrial hygiene matters listed in the general and case specific reports they jointly signed on behalf of the Gobell Hays firm. (Ex.6; Ex.7.) Industrial hygienists provide opinions about asbestos fiber release, asbestos content of materials, exposures, and other matters. CBS claims that "neither Stephen Kenoyer nor Kenneth Garza adequately document the level of exposure experienced by Mr. Pehlke and their ability to express opinions on causation is limited because of that unreliability." CBS took the deposition of Kenoyer in the *Pehlke* case and several depositions of Mr. Kenoyer in other switchgear cases about the joint general report and opinions he holds about

---

[3] Dr. Bedrossian's original and supplemental report are attached for this Court's consideration. (Ex.4; Ex.5.)
[4] Dr. Bedrossian's list of testimony within the past 5 years filed in this case in 2012 lists more than 50 cases. Additional testimony has occurred since that time.
[5] If CBS argues the "each and every exposure theory" is an improper theory under *Daubert*. Plaintiff will stipulate Dr. Bedrossian's causation testimony will not involve such testimony.

exposures during the same routine work practices that occur during switchgear maintenance. The cost of Mr. Kenoyer or Mr. Garza to prepare and testify in person at a *Daubert* hearing is estimated to be over $11,000.

While industrial hygienists do not offer medical testimony about causation, their testimony does explain the fiber release from which medical experts make the medical causation connection. The cost of a *Daubert* hearing is not proper concerning Kenoyer/Garza for several reasons. First, Judge Robreno in MDL-875 already has ruled evidence or data of asbestos fiber release is sufficient for causation to be determined by the jury. This ruling is controlling about the evidence of asbestos fiber release to which Kenoyer or Garza should be permitted to testify about at trial. The concerns of CBS about Kenoyer or Garza being unable to "adequately document the level of exposure" relate to the "quality of the expert's data and conclusions" or "reliability of data and assumptions" and fall outside the scope of *Daubert* inquiry about methodology. *Manpower*, 732 F.3d at 806, 808. CBS can cross examine at trial about the "documentation" being relied upon, but a *Daubert* hearing is not appropriate. Second, exclusion of industrial hygiene testimony is likely to be dispositive and cannot be relitigated after the MDL-875 deadline for dispositive motions passed. Third, Kenoyer and Garza's general asbestos report provides a detailed discussion of asbestos-containing materials in electrical switchgears and bystander exposures with citation to scientific publications. (Ex 6 at 17-21, 12-14.) There has also been extensive deposition testimony about the switchgear exposures. Kenoyer and Garza's April 1, 2016 report lays out the case specific evidence to support their conclusions that Pehlke's role as a bystander to switchgear work created significant asbestos exposure. (Ex.7 .) This Court can assess the literature cited in the general report and the relationship to the case

specific report based on existing testimony and have the expert appear at the hearing by telephone if needed.

Huttner

CBS stated that "neither James Huttner nor Samuel Wineman are experts in any field that advance the issue(s) in the case." (Ex.2.) Under Fed. R. Civ. P. 702, an expert witness can be qualified to testify as an expert based on their "knowledge, skill, experience, [and] training."

Huttner is a union trade electrician by training and experience who describes the procedures routinely used for switchgear maintenance and the customary deterioration observed of insulation materials within a year after the switchgear is put into service. He has been deposed three times by CBS counsel on the same basic report about the deterioration and maintenance procedures.[6] Another deposition specific to the *Pehlke* case demonstrative images is scheduled to be held on June 1, 2016.[7] In light of the past testimony, this Court can assess any *Daubert* related concerns about Mr. Huttner's expertise without him appearing in person. Since Huttner is within driving distance of the Courthouse and his hourly rate is considerably lower than the academic experts, he could prepare and appear in person for under $1,000 at a *Daubert* hearing.

---

[6] Huttner's most recent revised report is attached as Exhibit 8.

[7] The switchgear images are exhibits 9, 10, 11, 12, and 13.

<u>Wineman</u>

CBS stated that "neither James Huttner nor Samuel Wineman are experts in any field that advance the issue(s) in the case." (Ex.2.) Under Fed. R. Civ. P. 702, an expert witness can be qualified to testify as an expert based on their "knowledge, skill, experience, [and] training."

Wineman is a degreed licensed professional engineer who has also been retained by defense counsel about switchgear asbestos. He has served as project design manager for construction of large industrial facilities which included knowing the materials used for switchgear insulation. Wineman is over 80 years old and must travel from Florida to testify in person. His preparation time and personal appearance at a *Daubert* hearing are estimated to cost more than $6,000. Wineman's report in this case and a previous deposition taken for trial are attached. (Ex.14; Ex.15.) Wineman was also deposed in the *Pehlke* case.

Defendant's claim that Wineman is not an expert "in any field that advances the issues in this case" is a relevance or qualifications objection which does not warrant a *Daubert* hearing. The relevance of Wineman's testimony is specifically recognized in the opinion of Judge Robreno denying summary judgment. This Court should abide by the finding of relevance made by Judge Robreno. If the Court does need to review any portion of Wineman's testimony under *Daubert*, Wineman has given at least four depositions where CBS counsel conducted cross examination. These depositions and his CV spell out his qualifications and basis for knowing the asbestos content of switchgear and the presence of asbestos in switchgear dust. This Court can also evaluate the testimony of Wineman in past cases and conduct further questioning by telephone if needed.

*Undue Burden*

In the interest of conserving judicial resources and resources of the parties, this Court should consider the costs of the *Daubert* hearing and determine the extent of participation necessary from experts. The cost of having the four Plaintiff's experts appear in person for a *Daubert* hearing exceeds $30,000. Experts must be scheduled in advance of appearances and cancellation fees are high.

## Relief Requested

Due to the costs involved it scheduling experts, this Court should make a determination about which experts should be subjected to a *Daubert* hearing based upon the ruling by Judge Robreno and Seventh Circuit case law spelling out the permissible areas of Daubert inquiry. Once this Court has determined the experts for whom proper *Daubert* concerns exist, the Court should determine, in light of the costs involved and available past testimony and reports, which experts should appear in person and which can appear by a telephone conference.

Dated: May 27, 2016

_/s/ Daniel B. Hausman_____
Attorney for Plaintiff

Robert G. McCoy
Daniel B. Hausman
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
dhausman@cvlo.com

**Certificate of Service**

      I hereby certify that on May 27, 2016, I caused the forgoing to be electronically filed with the United States District Court for the Northern District of Illinois using the CM/ECF system which will automatically send all necessary notifications of this filing to CM/ECF participants in this case.


Dated: May 27, 2016

 /s/ Daniel B. Hausman_____
Attorney for Plaintiff

Daniel B. Hausman
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
dhausman@cvlo.com