## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LUELLA PEHLKE, Individually and as Special Administrator of the Estate of FRANK PEHLKE, Deceased, | |
| Plaintiff, | Case No.: 12−cv−00596 |
| v. | Honorable Virginia M. Kendall |
| CBS Corporation, | |
| Defendant. | |

### Plaintiff's Supplemental Pretrial Brief – 9/28/16

Pursuant to Court order during the September 23, 2016 pretrial conference, Plaintiff files supplemental briefing on motions in limine for which the Court requested additional briefing and on the Construction Statute of Repose (CSOR) defense asserted by CBS for the first time as part of the final pretrial proceedings.

**Plaintiff's MIL #3 – Bar the Environmental Baseline Survey**

Plaintiff moved in limine to bar testimony and reference to the recently (July, 2016) disclosed several thousand page "Environmental Baseline Surveys" ("EBS"). (ECF Doc #101, Plaintiff's MIL #3.) The EBS were first disclosed as reliance documents of CBS's untimely disclosed opinions of Raymond McMullen. In the pretrial exhibit submissions, CBS numbered the EBS as exhibits 1129 and 1130. After the pretrial conference on September 23, 2016, CBS filed a memorandum identifying excerpts CBS would use from the EBS. (ECF Doc #s 117, 117-

1

1, 117-2.)  The EBS are inadmissible because they are hearsay, not relevant (no reference to asbestos containing switchgear, no connection to Frank Pehlke's work, and other relevance issues), lead to prejudicial inference and argument, and contain hearsay within the documents.

At the *Daubert* hearing two types of switchgear technologies were mentioned by CBS witness McMullen - "air" (or "air-magnetic") and "oil filled".  The oil filled breaker switchgear were only installed before the end of World War II according to CBS expert witness McMullen and were associated with certain chemical hazards.  The air circuit technology had asbestos insulation components such as arc chutes containing separator plates.

CBS may attempt to argue or have the jury infer asbestos containing air circuit switchgear was not used in construction at Joliet because the EBS does not mention such switchgear in the "asbestos" section CBS designated.  The study is not admissible and, if admissible, not relevant for such purposes.


*Hearsay*[1]

CBS claimed during the September 23 pretrial conference that the ancient documents exception, FRE 803(16), applies.  CBS exhibit 1129 is dated October 18, 2016 and CBS exhibit 1130 is dated September 27, 1997.  (ECF Doc #s 117-1 at 2, 117-2 at 2.)  The documents do not fall under the 803(16) exception because they are less than 20 years old.  "A statement in a document that is at least 20 years old and whose authenticity is established."  FRE 803(16).

CBS in the written submissions now argues the EBS are admissible under FRE 803(8) public record exception.  (ECF Doc #117.)[2]  FRE 803(8) does not apply.  The documents are not

---

[1] This discussion relates to the document as a whole being hearsay.  The separate problem of hearsay within the text of document is discussed below.

a "record or statement" or "observations" made by a public office or public officer as required by the Rule. The EBS reports are written by a private contractor - Plexus Scientific Corporation. Plexus also collected the data for the reports.

To support admission of the EBS, CBS submitted an affidavit signed by Jacquelin Cain, the "Chair, Executive Management Team for Plexus Scientific Corporation." (CBS exh 1133, Ex.6, ECF Doc # 117-5; ECF Doc # 117.) The affidavit does not cure the hearsay problems. The July 25, 2016 affidavit is not made by a public official or a public office, does not state a public office collected the data, wrote the report or had any involvement except to authorize the work by Plexus. The July 25, 2016 affidavit does not cure the hearsay problems.[3]


*Relevance*

If the EBS is admissible as an exception to the hearsay rule, CBS has not shown the relevance in proving whether air circuit, i.e. asbestos containing, breakers were used in construction. The EBS is a unique one-time document and does not provide enough information to establish relevance. The survey was apparently prepared for the purpose of meeting notice requirements about identifying certain hazardous materials to facilitate transfer of federal property. No showing is made the EBS, an environmental study done decades after the

---

[2] The 1972 FRE Advisory Committee Notes state that "the more controversial area of public records is the so-called evaluative report" and that "factors which may be of assistance in passing upon the admissibility of evaluative reports include: (1) the timeliness of the investigation, (2) the special skill or experience of the official, (3) whether a hearing was held and the level at which it was conducted … others no doubt could be added." (citations omitted.)

[3] The affidavit states that the report was completed in "compliance with 40 Code of Federal Regulation Part 373, Section 373.1 and Army Regulation 200-1." 40 CFR Part 373 ¶ 373.1 is a general government accountability regulation to make the document available for public inspection. Army Regulation 200-1 is a 140 page regulation with 27 references to asbestos. The Army regulation does not mention "switchgear" or "circuit breakers" as asbestos containing products to be analyzed.

construction of the Joliet Arsenal, was done to identify what air circuit breakers were used in construction at or above the 440 volt range. Two primary gaps in the foundation are: 1) the EBS does not purport to be based on complete records of construction or to cover all switchgear ever installed at Joliet. 2) the EBS lists asbestos products which were evaluated such as "siding," "roofing," "asbestos cement pipes," "asbestos insulation material on pipe," and "asbestos containing floor covering." (ECF Doc #s 117-1 at 19, 177-2 at 3.) Asbestos containing or air magnetic breaker switchgear is not listed in the EBS.[4]

The following are examples of missing or incomplete information necessary for a proper foundation of relevance to the issue of which and how many circuit breakers above 440 volts were asbestos containing:

- a precise statement of the surveys' purpose, which shows that all switchgear and breakers installed at Joliet Arsenal were subject to the survey.

- information about the authors of the document including their qualifications to know about the asbestos content of breakers[5]

- information about the persons interviewed for the report including their qualifications and knowledge of construction of Joliet Arsenal and the asbestos content of circuit breakers (ECF Doc # 117-1 at 4.)

- the complete scope of data collected about switchgear and the basis for determining what data was collected

---

[4] FRE 803(10) requires a showing the records of air magnetic breaker switchgear were regularly kept before the non-existence argument can be asserted. The EBS do not contain such evidence.

[5] The engineering expertise of Plexus Corporation and their employees is not established. Plaintiff has had to provide expert evidence from Samuel Wineman, an engineering expert, to prove circuit breakers above 440 volts contained asbestos over CBS's objections.

- details about the switchgear analyzed including whether it was operational and required maintenance when Pehlke worked at Joliet Arsenal, what type of equipment the switchgear was connected to, voltage levels of the switchgear, and what the study means by terms like "external" and "internal"  (ECF Doc # 177-2 at 7.)

Without additional foundation for relevance, the information provided in the baseline environmental survey is not sufficiently linked to Pehlke's claimed exposures.

*Prejudice*

Assuming the Court allows evidence about oil filled breakers, the EBS establishes oil filled breaker switchgear at Joliet Arsenal, but says nothing about asbestos (air) circuit breakers. That is prejudicial to Plaintiff.   While probative that oil filled breakers are used, that evidence does not overcome the prejudice.  Defense expert witness McMullen expressed the opinion about oil filled breakers and clarified that they were limited to the WWI construction period.  The EBS is cumulative of his opinion and does not reflect that the oil filled breakers are only be from the WWII era and were not used in later remodeling.  The EBS is also highly likely to confuse the jury because it is connected to the government (even though it was conducted by a private company and focuses on oil left in the ground) and mentions switchgear without explanation of what types of switchgear were analyzed, when they were installed, or other factors listed above.

*Hearsay within the survey*

The EBS contains inadmissible hearsay within the document.  The report was based on "a records search of several thousand documents, review of over 500 documents," "extensive environmental investigations and reports prepared for the JOAAP," "site historical documents,"

5

and interview of "personnel familiar with the JOAAP" which includes at least ten people. (ECF Doc # 117-1 at 4.) The statements in the survey based on other documents and reports are hearsay because those documents and reports were only recently disclosed and not subjects of discovery. Without discovery, the hearsay statements cannot become the basis of a document which is being used to assert the truth of a matter. The statements based on interview are hearsay because none of the persons interviewed were identified as potential witness and there has been no cross examination opportunity for the persons listed in the report.

**CBS's MIL #4 and #12 – Exclusion of post-sale failure to warn and Exclusion of post-sale evidence**

CBS filed an MIL to preclude evidence of a post-sale failure to warn (ECF Doc #89, CBS's MIL #4.) and an MIL to exclude post-exposure evidence. (ECF Doc #97, CBS's MIL #12.) MIL #12 relies on CBS's assertion that there is no post-sale duty to warn so both MILs can be resolved by one argument.

There are at least two issues relating to this contention. First, if Westinghouse knew or should have known about switchgear maintenance exposures at the time of the manufacture or sale of asbestos containing switchgear products, did they have a duty to warn and issue safety instructions relating to reasonably foreseeable later turnaround and maintenance exposures. Second, what is Westinghouse's duty if they lacked knowledge to warn at the time of the original manufacture or sale, but later "additional" scientific evidence about asbestos health hazards became available bearing on the duty to warn.

*Maintenance exposures*

Case law establishes the duty to warn owed in a negligence claim is determined largely by foreseeability of the injury. The Illinois Supreme Court has held factors to be considered in determining a duty to warn include:

> (1) the reasonable foreseeability that the defendant's conduct may injure inure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such injury, and (4) the consequences of placing that burden on the defendant.

*Happel v. Wal-mart Stores, Inc.*, 199 Ill.2d 179, 186-87 (2002).

Plaintiff will present evidence that maintenance practices/procedures for switchgear at Joliet were regular events that Westinghouse knew would occur in the future and which would cause exposure to asbestos-containing components that were set forth in instruction manuals provided with switchgear at the time of sale. These practices and procedures required cleaning and inspection using compressed air and brushing. These dusty procedures were also part of the standard practices by electricians. Plaintiff will present scientific evidence and internal documents of CBS showing they knew or should have known about the dangers of asbestos at the time the switchgear was sold. A jury can find from the evidence defendants failed to take reasonable precautions to warn about and instruct how to protect against foreseeable and inevitable fiber release during future maintenance.

A continuing duty to warn exists when a defendant knows of the dangers of the product at the time it leaves the control of the manufacturer. *Carrizales v. Rheem*, 226 Ill.App.3d 20, 34 (1st Dist. 1991). *Carrizales* involved a gas fired heater for which a safety device was developed about 9 years after the sale of the product. 226 Ill.App.3d at 34. The court stated "Illinois law has been reluctant to impose a duty to warn beyond the time when the product leaves the manufacturer's control unless the manufacturer knew or should have known at the time that the

product was defective." 226 Ill.App.3d at 34.  The court distinguished the situation where knowledge of hazards exist at the time of sale from those involving "better design or construction not available at the time the product entered the stream of commerce." 226 Ill.App.3d at 34.  The court in *Carrizales* recognized a continuing duty to warn exists in the former situation, but the court did not impose one in the latter situation involving a safety design improvement.

This case is not about improvements in safety features of design or construction.[6]  The design of switchgear, including asbestos content and the maintenance process which released fibers, did not change over the time when the products contained asbestos.  The maintenance procedures were in equipment manuals furnished at the time of sale.  Given the foreseeable maintenance events involving these materials, a jury can find 1) defendants knew or should have known about asbestos dangers when the switchgear was manufactured and sold and 2) exposures to asbestos-containing switchgear after the sale occurred during later maintenance.  If so, defendant is liable for not warning about the dangers or protective measures needed during maintenance that were standard practices when the equipment was sold.

Defendants cite case law that Illinois courts have been reluctant to impose "a duty to issue post-sale warnings of dangers which were not known, nor should they have been known, at the time the product left the manufacturer's control."  *Modelski v. Navistar International Transportation Company*, 302 Ill..App.3d 879, 888 (1st Dist. 1999)  *Modelski* involved defective tractor bolts.  The court held the defendant had no duty to "remedy a hazard of which it did not know, nor should it have known, until after the tractor was sold. . . ." 302 Ill.App.3d at 889.  The distinction here is defendant knew or should have known of the hazards of asbestos and

---

[6] Plaintiff does allege that the design could have included substitutes for asbestos.

switchgear maintenance is a foreseeable event which Westinghouse should have known about.

Nor does *Modelski* rule out a "continuing duty to warn" since the court elsewhere in the opinion

recognizes this can exist:

> Manufacturer's are charged with the knowledge of experts. Given that presumed
> degree of knowledge, a manufacturer's subjective understanding of the dangers
> associated with its use of its products, while relevant, is not determinative of its
> obligation to warn. Rather it is sufficient to impose a duty to warn if an expert in the
> field would have known of the product's dangerous propensity and foreseen injury in
> the absence of a warning. Under such circumstances, the duty to warn may well be
> continuous.

302 Ill.App.3d at 888 (citations omitted).


*"Increasing" Knowledge*

Increasing knowledge about asbestos health hazards has no bearing upon the duty to warn

about exposures after the product was installed. Plaintiff will present evidence that

Westinghouse continued to learn about the hazards of asbestos and about the release of asbestos

dust during switchgear maintenance procedures post-sale. Plaintiff will present evidence that

Westinghouse sold replacement parts containing asbestos such as arc chute units with separator

plates and did technical field support with engineers per testimony of McMullen and Huttner and

that trade organization and scientific publication information evolved over the post-sale period of

time.

Post sale knowledge of product dangers has been held to create a continuing duty to

warn. *Proctor v. Davis*, 291 Ill.App.3d 265, 277-8 (1st Dist. 1997). *Proctor* involved a drug

manufacturer Upjohn and health hazard information, some of which became known after the

initial marketing of the drug. The court held

> Upjohn, its manufacturer, must be held to the standard of an expert in the field and had a "continuous duty *** to warn physicians of the dangers incident to prescribing the drug, to keep abreast of scientific developments touching upon the manufacturer's product and to notify the medical profession of any additional side effects discovered from its use."

291 Ill.App.3d at 278. The court specifically rejected the argument that Upjohn could wait to warn until it believed medical science had established a "cause and effect relationship." 291 Ill.App.3d at 278.

**CBS' MIL – Exclusion of the "Square D Arc Chute Blow-Out Study"**

CBS filed a MIL to exclude Reference and Reliance on the "Square D Arc Chute Blow-Out Study" or in the alternative to allow testimony by Dr. Longo. (ECF Doc #85.) The April 2010 Square-D arc-chute study is titled as a revision and the work practices which form the basis of the study were part of the 2009 study. (Ex.4 at 1, 5, 7, 12, 13.) The conclusion states:

> Our Square D work practice study determined that when a worker was required to cleanout an asbestos-containing arc chute with compressed air he would have been exposed to significant levels of airborne asbestos fibers. The level of this airborne asbestos exposure was hundreds of times above measured background levels of 0.001 fibers/cc.

(Ex.4 at 10.)

CBS claims that the report "was not disclosed as Reliance Material by Mr. Garza in his previous reports of record in this case" in support of its MIL. (ECF Doc #85 at 1.) However, CBS's expert industrial hygienist Kyle Dotson disclosed the study at issue in his 26(a)(2) expert reports. In his November 22, 2012 report Kyle Dotson cited to the September 2009 square D Arc-Chute Blow-Out Study. (Ex.1 at 10, n.58.) Dotson also cited to the same September 2009 report in his May 20, 2016 supplemental report. (Ex.2 at 24, n.101.) CBS disclosed and provided the April 2010 Square-D arc-chute study to Plaintiff on July 21, 2016 prior to the

*Daubert* hearing. (Ex.3.) There is no improper disclosure by Plaintiff, as Ken Garza is properly commenting in his testimony on a study disclosed by CBS and relied upon by CBS's expert.

*William Longo*

CBS has offered William Longo as a rebuttal witness for a study disclosed in the reports of defense expert Kyle Dotson and relied upon by Dotson. Under FRCP 26(2)(d)(ii), a party must disclose expert testimony within 30 days after the other party's disclosure. Since CBS disclosed the study, the rule allowing a rebuttal disclosure is inapplicable. Plaintiff objects to the rebuttal disclosure of Longo.

**CSOR defense**

During the September 23, 2016 pretrial conference, CBS claimed that they will assert a construction statute of repose defense during trial which will be part of a directed verdict motion. This Court should bar such argument and motion as untimely and should bar it because it has no merit. In particular, the argument conflicts with the MDL-875 remand order which states the case is trial ready and dispositive motions ruled on. (Ex.5 at 1 ¶d, 2 ¶f.) Issues which are dispositive and could have avoided remand and the extensive work to prepare for trial had to be presented in the MDL.

*Untimely*

Plaintiff moved this Court to limit MIL's and *Daubert* motions to non-dispositive and this Court granted Plaintiff's motion. (ECF Doc #s 42, 55.) Plaintiff adopts her earlier argument concerning the untimeliness of potential dispositive motions by CBS contained in ECF Doc # 42

and #48 and moves this Court to hold that the assertion of the CSOR defense is untimely. The evidence forming the basis for the CSOR defense was known to CBS before the dispositive motion deadline in the MDL. CBS did not plead the construction statute of repose defense in the MDL-875 Court and did not raise the defense in its motion for summary judgment in the MDL-875 Court. On February 10, 2016 this Court ordered:

> Deadline by which parties may amend complaint and answer, April 1, 2016. No new claims or defenses can be asserted which have not been part of the past discovery.

(ECF Doc # 38.)

On April 14, 2016 CBS filed an answer to Plaintiff's complaint that asserted, for the first time, that "Plaintiff's claims against this defendant are barred by the applicable statute of limitations, statute of repose, and/or by the doctrine of laches." (ECF Doc #45 at 6 ¶2.) CBS's answer was untimely by this Court's order and the proceedings in the MDL-875 court. CBS's affirmative defense was not plead with sufficient specificity as it does not reference the Illinois construction statute of repose. CBS's answer asserts a defense which was not part of past discovery in defiance of this Court's order. For these reasons CBS's CSOR defense should be barred.

*No merit*

The CSOR defense does not apply as a matter of law. The Illinois CSOR is titled: "Construction –Design management and supervision." The pertinent language from the statute is subsection (b) which states:

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

735 ILCS 5/13-214(b)

Illinois case law holds that maintenance work, such as the switchgear maintenance work for which Pehlke was exposed as a bystander, is not protected under the CSOR. "An improvement to real property is an addition which amounts to more than a mere repair or replacement and which substantially enhances the value of the property. It does not include ordinary maintenance." *Merritt v. Randall Painting Co*., 314 Ill. App. 3d 556, 561 (1st Dist. 2000). *Litchfield Cmty Unit Sch. Dist. No. 12 v. Specialty Waste Servs., Inc.*, 325 Ill. App. 3d 164 (5th Dist. 2001), holds "ordinary repair and maintenance" of a structural improvement is not protected by the CSOR.

**Plaintiff's MIL #6 – Regarding the demonstrative switchgear videos**

CBS asserted FRE 401, 402, and 403 objections based on "no evidence that the switchgear depicted in the videos is the same as the switchgear present at Joliet Arsenal" and "the activities performed in the videos were the same as those used at Joliet Arsenal." (ECF Doc #119 at 1-2.) James Huttner is the primary expert that will use the videos as a demonstrative tool during testimony.

James Huttner's opinion at trial will be that the maintenance procedures depicted in the video are the customary practices that would have been used at Joliet Arsenal. Huttner's testimony answers the CBS argument that the videos do not demonstrate maintenance procedures at the Joliet Arsenal. CBS does not explain how the video based on Huttner's opinion is inconsistent with the coworker testimony about the procedures that were followed.

As to the argument of CBS about proving a particular model used at the Joliet Arsenal, CBS engineering witness McMullen testified to the many models of air circuit breakers which CBS offered over the years. The key factor, which McMullen acknowledged, is air circuit

13

breakers, no matter what model, had the common design "configuration" of using arc chutes and separator plates made from asbestos. (Ex.7 at 2-3 tr. 92-93.) Plaintiff expert Wineman also confirmed separator plates were used whenever the 440 and above voltage range was needed. In denying summary judgement, MDL 875 Judge Robreno stated plaintiff had introduced evidence the circuit breakers which caused the exposures were asbestos containing (Ex.8 at 10.) Huttner will explain at trial how the video demonstrates the maintenance practices on all switchgear above 440 volts which were constructed using arc chutes and separators plates to control the arc. The foundation is laid for the video being a demonstrative applicable to all circuit breakers at the Joliet Arsenal above 440 volts built using arc chutes and separator plates.

The test of whether the demonstrative videos can be used is whether they are based on admitted evidence:

> Demonstrative proof has only a secondary or derivative function at trial: it serves only to explain or clarify other previously introduced, relevant substantive evidence. These pedagogical devices are used to aid the jury in its understanding of the evidence that has already been admitted ... in the end they are not admitted as evidence.

*Baugh* 730 F.3d 701 at 707 (quotations and citations omitted).

CBS can present evidence and argument that the models at Joliet Arsenal were a different construction, i.e. oil filled, and the jury can resolve the issue. A limiting instruction can be given saying the switchgear in the videos is not from the Joliet Arsenal. CBS can question Huttner on cross about the videos.

CBS additionally argues that "Plaintiff has photographs of the 'deconstructed pieces of switchgear' also listed" which "could demonstrate to the jury the component parts of the switchgear" and therefore diminish the need for the videos. (ECF Doc #119 at 2.) The pictures of the plates do not show the maintenance procedures which create the exposures. However,

14

demonstrative video illustrates the maintenance procedure which assists the jury to understand the testimony of Huttner and other witnesses about what leads to the exposures.

*Other CBS argument*

CBS makes objections to Plaintiff's demonstrative videos are based on FRE 401, 402, and 403, which determine whether evidence is admissible to the jury and have a less important role in determining whether a demonstrative video is allowed. Here, Plaintiff is not seeking admission of the videos.

The parties stipulated videos and other demonstrative evidence are not admissible as substantive evidence and will not go to the jury during deliberation. This agreement comports with the Seventh Circuit's description of demonstrative evidence as compared to substantive evidence:

> When an exhibit is offered as substantive evidence, parties know they must make any objections they might have to the evidence at that point. Conversely, when an exhibit is allowed to be used for only demonstrative purposes, the judge and the parties understand that the exhibit is argumentative and persuasive in nature. Such pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations

*Baugh v. Cuprum S.A. De C.V.*, 730 F.3d 701, 708 (7th Cir. Ill. 2013) (quotations and citations omitted)

**CBS's MIL #5 – Trade Organizations**

CBS's MIL #5 is no longer disputed based on CBS's supplemental briefing filed on September 27, 2016. (ECF Doc #120.)

Dated: September 28, 2016

15

\_/s/ Daniel B. Hausman_____

Attorneys for Plaintiff

Daniel B. Hausman
Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
dhausman@cvlo.com

**Certificate of Service**

I hereby certify that on September 28, 2016, I caused the forgoing to be electronically filed with the United States District Court for the Northern District of Illinois using the CM/ECF system which will automatically send all necessary notifications of this filing to CM/ECF participants in this case.


Dated: September 28, 2016


 _/s/ Daniel B. Hausman_____

Attorney for Plaintiff

Daniel B. Hausman
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
dhausman@cvlo.com